LETITIA JAMES
Attorney General for the State of New York
STEPHEN C. THOMPSON
Special Counsel
Rabia Muqaddam
Chief Counsel for Federal Initiatives
Patrick Gibson
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6183
Email: Stephen.Thompson@ag.ny.gov

*Attorneys for the State of New York*

[Additional counsel to appear on signature page]


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | Case No. 6:25-cv-02384-AA |
| Plaintiffs, | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| RUSSELL T. VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*, | **EXPEDITED HEARING REQUESTED** |
| Defendants. | |

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

ARGUMENT ............................................................................................................... 1

I.   This Court Has Jurisdiction Over Plaintiffs' Claims ......................................... 2

     A.   The Acting Director's request for second quarter funding pursuant to the *NTEU* injunction does not moot Plaintiffs' claims. .................................... 3

     B.   The possibility that the Federal Reserve will have "combined earnings" in the future does not foreclose Plaintiffs' claims. ....................................... 8

     C.   The prudential mootness doctrine does not foreclose Plaintiffs' claims. ................ 13

     D.   Finding for Plaintiffs would not amount to prejudicial error. ................................. 15

     E.   Defendants' other arguments that Plaintiffs lack standing fail. ............................. 16

II.  Separate Litigation by Separate Plaintiffs in Separate Jurisdictions Does Not Warrant Dismissal or Transfer of This Action ................................................... 19

     A.   The first-to-file rule does not require dismissal. ....................................... 19

     B.   The interest of justice does not require transfer. ....................................... 20

III. Plaintiffs Are Entitled to Summary Judgment on Their Contrary to Law and Delayed Agency Action Claims ....................................................................... 21

     A.   Defendants Vought and CFPB's decision to not seek funding from the Federal Reserve is final agency action....................................................... 21

     B.   Defendants Vought and CFPB's interpretation of "combined earnings" has no basis in the text or history of the CFPB's organic statute. ................................. 23

     C.   Plaintiffs have a meritorious claim for agency action "unlawfully withheld" under 5 U.S.C. § 706(1). .......................................................... 25

     D.   Defendant Vought and CFPB's actions violate the separation of powers............... 28

     E.   Plaintiffs have not abandoned the Sixth Cause of Action. ....................................... 29

IV.  Plaintiffs Are Entitled to the Injunctive and Declaratory Relief They Seek .................... 29

     A.   Plaintiffs are entitled injunctive and declaratory relief, in addition to vacatur, on their claims challenging the Challenged Decisions. ........................................... 29

B.      Plaintiffs are entitled to an order compelling Defendant Vought to request funding for the entirety of Fiscal Year 2026 under 5 U.S.C. § 706(1)..................... 30

C.      Defendants Vought and CFPB's other arguments against injunctive relief lack merit. ......................................................................................................... 31

V.      The Court Should Not Stay Any Injunctive Relief. ......................................... 32

CONCLUSION....................................................................................................................... 32

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Already LLC v. Nike*,
  568 U.S. 85 (2013) ..................................................................................................11

*Am. Tobacco Co. v. Patterson*,
  456 U.S. 63 (1982) .................................................................................................27

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
  935 F.3d 858 (9th Cir. 2019) ................................................................................16

*Behring Reg'l Ctr., LLC v. Wolf*,
  No. 20-cv-09263-JSC, 2021 WL 1164839 (N.D. Cal. Mar. 26, 2021) ...................19

*Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*,
  No. CV10-1366-SU, 2011 WL 1706216 (D. Or. May 5, 2011) .............................20

*Bibo v. Federal Exp., Inc.*,
  No. C07-2505 THE, 2007 WL 2972948 (N.D. Cal. Oct. 10, 2007) ................19, 21

*California v. HHS*,
  941 F.3d 410 (9th Cir. 2019) ........................................................................... 5-7, 10

*California v. U.S. Dep't of Transp.*,
  No. 25-cv-208-JJM-PAS, 2025 WL 3072541 (D.R.I. Nov. 4, 2025) ....................30

*California Wilderness Coal. v. U.S. Dep't of Energy*,
  631 F.3d 1072 (9th Cir. 2011) ...............................................................................16

*CFPB v. Comm'ty Fin. Servs. Assoc. of Am., Ltd.*,
  601 U.S. 416 (2024) ...........................................................................................15, 24

*Chamber of Com. v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ...............................................................................28

*Chamber of Commerce v. Department of Energy*,
  627 F.2d 289 (D.C. Cir. 1980) .......................................................................... 14-15

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*Charles v. Daley*,
    749 F.2d 452 (7th Cir. 1984) .................................................................8

*City & Cnty. of San Francisco v. USCIS*,
    944 F.3d 773 (9th Cir. 2019) .................................................................5

*City of L.A. v. Barr*,
    929 F.3d 1163 (9th Cir. 2019) .........................................................9-10

*Dalton v. Specter*,
    511 U.S. 462 (1994) ............................................................................28

*Data Mktg. P'ship, LP v. United States Dep't of Lab.*,
    45 F. 4th 846 (5th Cir. 2022) ..............................................................32

*Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*,
    744 F.3d 1124 (9th Cir. 2014) ............................................................14

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
    438 U.S. 59 (1978) ..............................................................................18

*FBI v. Abramson*,
    456 U.S. 615 (1982) ............................................................................27

*FCC v. Consumers' Rsch*,
    606 U.S. 656 (2025) ..............................................................................9

*FDA v. Wages & White Lion Invs., LLC*,
    604 U.S. 542 (2025) ............................................................................15

*Flagstaff Med. Ctr., Inc. v. Sullivan*,
    962 F.2d 879 (9th Cir. 1992) ................................................................7

*Flaxman v. Ferguson*,
    151 F.4th 1178 (9th Cir. 2025) ...........................................................14

*Food Mkt. Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019) ............................................................................24

*Forest Guardians v. Johans*,
    450 F.3d 455 (9th Cir. 2006) ................................................................4

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................11

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*Gutierrez v. Saenz,*
  606 U.S. 305 (2025).................................................................................5-6, 8

*Hamamoto v. Ige,*
  881 F.3d 719 (9th Cir. 2018) ............................................................10

*Haynes v. Hooters of Am., LLC,*
  893 F.3d 781 (11th Cir. 2018) ...........................................................7

*Haynes v. World Wrestling Ent., Inc.,*
  No. 3:14-cv-01686-ST, 2015 WL 3905281 (D. Or. June 25, 2015).....................21

*Hells Canyon Pres. Council v. U.S. Forest Serv.,*
  593 F.3d 923 (9th Cir. 2010) ............................................................26

*Hunt v. Imperial Merchant Servs., Inc.,*
  560 F.3d 1137 (9th Cir. 2009) ...........................................................14

*Jacobs v. Clark Cnty. Sch. Dist.,*
  526 F.3d 419 (9th Cir. 2008) .............................................................4

*Kingdomware Techs., Inc. v. United States,*
  579 U.S. 162 (2016)........................................................................9

*Kissinger v. Reporters Committee for Freedom of the Press,*
  445 U.S. 136 (1980)........................................................................27

*Kleissler v. U.S. Forest Serv.,*
  157 F.3d 964 (3d Cir. 1998)...............................................................5

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
  787 F.3d 1237 (9th Cir. 2015) ...........................................................19

*Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.,*
  263 F.3d 1041 (9th Cir. 2001) ...........................................................29

*Maldonado v. Lynch,*
  786 F.3d 1155 (9th Cir. 2015) (en banc) ...............................................14

*Martin v. United States,*
  605 U.S. 395 (2025)........................................................................24

*Martinez-Serrano v. INS,*
  94 F.3d 1256 .................................................................................29

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*N. Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union,*
*Loc. No. 60,*
  685 F.2d 344 (9th Cir. 1982) ............................................................ 5-6

*N.C. State Conf. of the NAACP v. Raymond,*
  981 F.3d 295 (4th Cir. 2020) ............................................................ 5-6

*Nat. Res. Def. Council, Inc. v. EPA,*
  961 F.3d 160 (2d Cir. 2020).............................................................. 16

*Nat'l Automatic Laundry & Cleaning Council v. Shultz,*
  443 F.2d 689 (D.C. Cir. 1971) ........................................................ 22, 32

*Nat'l Council of Agric. Emps. v. U.S. Dep't of Lab.,*
  No. 22-3569 (RC), 2023 WL 2043149 (D.D.C. Feb. 16, 2023) ............................ 31

*Nat'l Treasury Employees Union et al., v. Vought et al.,*
  No. 1:25-cv-381 (D.D.C. Dec. 16, 2025) ECF No. 164 .................................. 12

*Nat'l Treasury Emps. Union v. Vought,*
  No. CV 25-0381 (ABJ), 2025 WL 3771192 (D.D.C. Dec. 30, 2025) ............... 3, 7, 19-20, 23

*National Wildlife Federation v. United States,*
  626 F.2d 917 (D.C. Cir. 1980) .......................................................... 15

*New York v. Dep't of Energy,*
  No. 6:25-cv-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025) ......................... 29

*New York v. Noem,*
  No. 25-cv-8106 (LAK), 2025 WL 2939119 (S.D.N.Y. Oct. 16, 2025)........................ 30

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004)..................................................................... 26

*NTEU v. Vought,*
  25-cv-00381 (D.D.C. Nov. 10, 2025) .................................................... 18

*NTEU v. Vought,*
  No. 25-5091 (D.C. Cir. Jan. 9, 2026)............................................... 7, 19-20

*Nuclear Regul. Comm'n, v. Texas,*
  605 U.S. 665 (2025).................................................................... 28

*Petroluem Expl. v. Pub. Serv. Comm'n of Ky.,*
  304 U.S. 209 .......................................................................... 31

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*Planned Parenthood Great Nw. Hawaii, Alaska, Indiana, Kentucky v. Labrador*,
    122 F. 4th 825 (9th Cir. 2024) ................................................................14

*Planned Parenthood v. HHS*,
    946 F.3d 1100 (9th Cir. 2020) ................................................................9

*Project Veritas v. Schmidt*,
    125 F.4th 929 (9th Cir. 2025) ................................................................13

*Public Citizen v. Bowen*,
    833 F.2d 364 (D.C. Cir. 1987) ................................................................22

*Rhode Island v. Trump*,
    155 F.4th 35 (1st Cir. 2025)...................................................................16

*Rise Economy v. Vought*,
    5:25-cv-10481 (N.D. Cal.) ....................................................................19

*Rise Economy v. Vought*,
    No. 5:25-cv-10481 (N.D. Cal. Jan. 16, 2026) ........................................12

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) ................................................................11

*Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union,
Locs. 13, 63, & 94*,
    939 F.2d 866 (9th Cir. 1991) .................................................................7

*Seila Law LLC v. Consumer Fin. Protect. Bureau*,
    591 U.S. 197 (2020)..............................................................................18

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020) ................................................................28

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).........................................................................8, 13

*Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*,
    219 F. Supp. 2d 1049 (C.D. Cal. 2002) .................................................7

*Union Gospel Mission of Yakima Wash. v. Brown*,
    162 F.4th 1190 (9th Cir. 2026) .............................................................13

*United States v. Moi*,
    No. 3:19-cr-00112-TMB-DMS, 2021 WL 4048596 (D. Alaska June 7, 2021)........................6

Page vii - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
          SUMMARY JUDGMENT

*Wallingford v. Bonta,*
   82 F.4th 797 (9th Cir. 2023) ...........................................................................9

*Ward v. Lime Fin. Servs., Ltd.,*
   No. CV.08-840-AC, 2009 WL 10692461 (D. Or. Jan. 15, 2009) ..........................................21

*West Virginia v. EPA,*
   597 U.S. 697 (2022).........................................................................11, 13

*Wright v. Guliani,*
   230 F.3d 543 (2d Cir. 2000)..............................................................6-7

**Federal Statutes**

5 U.S.C.
   § 552...........................................................................................27
   § 706........................................................................ 2, 20, 25-26, 28, 30

12 U.S.C.
   § 1851.........................................................................................24
   § 2809.........................................................................................17
   § 5385.........................................................................................24
   § 5390.........................................................................................24
   § 5493.........................................................................................16
   § 5496.........................................................................................17
   § 5497........................................................1, 4, 8, 20-26, 27, 30-31
   § 5511.........................................................................................28

15 U.S.C.
   § 1691c-2 ................................................................................ 23-24

28 U.S.C.
   § 1404.........................................................................................20

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203 (2010)............23

**Miscellaneous Authorities**

H.R. 4173 § 4109(a)(1) (Dec. 2, 2009)........................................................24

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

## **ARGUMENT**

Defendant Vought has made no secret of his goal to destroy the Consumer Financial Protection Bureau ("CFPB"). Indeed, he readily concedes that his hope for this litigation is that he will walk away with the "discretion to refuse to request funding" for the CFPB. Opp'n at 20. This Court should not countenance this or any of Defendants Vought and CFPB's other arguments, which seek to twist, turn, and recoil from the plain meaning of the phrase "combined earnings" in 12 U.S.C. § 5497(a)(1) and Defendant Vought's duty to determine and request from the Board of Governors of the Federal Reserve System the amounts reasonably necessary for the CFPB's congressionally mandated activities and operations.

As articulated in Plaintiffs' opening brief and set out in detail below, Plaintiffs respectfully request the Court's urgent attention to this matter to prevent the defunding of the CFPB that is likely to occur as soon as the end of the current quarter of the federal fiscal year, on March 31, 2026.

Defendants Vought and CFPB's argument that this lawsuit has been mooted by Defendant Vought's compliance with a court order in *NTEU v. Vought* and possible future changes regarding the Federal Reserve's profitability lacks merit. To begin, Defendants Vought and CFPB continue to stand by the core agency action that Plaintiffs challenge: their decision to refuse to request funding from the Federal Reserve when its interest expenses exceed revenues based on a newly adopted and illogical interpretation of the statutory term "combined earnings." And they likewise have not backed down from their refusal to request funding for the entirety of Fiscal Year ("FY") 2026, offering only that they *might* reverse course depending on future developments. Moreover, the case law is clear that a preliminary injunction in one matter  subject to appeal cannot moot an overlapping challenge in another. Nor does uncertainty about the Federal Reserve's future cash flows moot Plaintiffs' claims. Even if such uncertainty were otherwise sufficient to moot Plaintiffs' claims—and it is not—this case would still fall squarely within the well-recognized mootness exceptions for disputes that are capable of repetition yet evading rule and voluntary

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

cessation. Defendants Vought and CFPB thus fail to meet the heavy burden they bear to demonstrate that this case is moot.

On the merits, Defendants Vought and CFPB contend that Defendant Vought's final decision, stated clearly in letters to both the President and Congress, to not seek funding for the entirety of FY 2026 for the CFPB because of the Federal Reserve's unprofitability, is not "final agency action" for purposes of a 5 U.S.C. § 706(2) claim. That argument fails on its face. There was nothing abstract or temporary about Defendant Vought's decision, and Plaintiffs continue to be at risk of suffering the very real injury of losing access to the Consumer Response System and Home Mortgage Disclosure Act ("HMDA") data to which they are statutorily entitled. With respect to Plaintiffs' claim for agency action "unlawfully withheld" under 5 U.S.C. § 706(1), Defendants Vought and CFPB implausibly argue that a demand that Defendant Vought act by requesting funding for the remainder of FY 2026—which would require sending a one-page letter to the Federal Reserve—is insufficiently "discrete." They further argue that the Director of the CFPB has no statutory duty to submit the CFPB's funding needs to the Federal Reserve. Instead, Defendant Vought expects the Federal Reserve to ferret out the information through Freedom of Information Act ("FOIA") requests or otherwise scour court filings and public statements in which the Director happens to describe the agency's budgetary needs for any given fiscal year. Opp'n at 19 (citing 5 U.S.C. § 552). That defies logic and the best reading of the statute.

Finally, Plaintiffs are entitled to the declaratory and injunctive relief they seek, which is authorized by the Administrative Procedure Act ("APA") and well within this Court's equitable and statutory authority to issue.

## I.      This Court Has Jurisdiction Over Plaintiffs' Claims

Plaintiffs' claims continue to present a live and justiciable controversy that requires this Court's adjudication. Defendants Vought and CFPB principally argue that two purported post-filing developments render Plaintiffs' claims nonjusticiable: (1) CFPB's funding request to the Federal Reserve for the second quarter of FY 2026, pursuant to a preliminary injunction in

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

*National Treasury Employees Union v. Vought* ("*NTEU*"),[1] and (2) the possibility that the Federal Reserve's income may now exceed its interest expenses. Neither development forecloses Plaintiffs' claims. The funding request for a single quarter does not alter the agency actions that Plaintiffs challenge: CFPB's determination that it cannot request funding when the Federal Reserve is operating at a loss, and its decision not to request funding for the entirety of FY 2026. Nor does the issuance of a preliminary injunction in another case involving different legal claims and theories, subject to an active appeal, strip this Court of the power to adjudicate Plaintiffs' claims. Additionally, the mere possibility that the Federal Reserve may currently have "combined earnings" under Defendants Vought and CFPB's interpretation of that phrase hardly moots a challenge to that interpretation. Indeed, even if it was certain that the Federal Reserve would have sufficient income for Defendant Vought to request funding for the third quarter of FY 2026, the recent volatility of its earnings underscores that this controversy is "reasonably likely to recur," defeating any claim of mootness. Finally, this Court should reject Defendants Vought and CFPB's scattershot arguments that Plaintiffs lack standing or have unripe claims. Plaintiffs continue to face a substantial risk of injury from Defendants Vought and CFPB's actions as soon as April.

**A. The Acting Director's request for second quarter funding pursuant to the *NTEU* injunction does not moot Plaintiffs' claims.**

Defendants Vought and CFPB's claim that "[t]his case is moot" because "Defendants have requested and received funding" for the second quarter of FY 2026 due to a court order in *NTEU v. Vought* misapprehends the nature of Plaintiffs' claims and is contrary to well-established mootness principles. Opp'n at 3.

Whereas standing "is determined based on the facts as they existed at the time the complaint was filed," "a case becomes moot—and, hence, non-justiciable—if the requisite

---

[1] *See* 774 F. Supp. 3d 1 (D.D.C.), *vacated and remanded*, 149 F.4th 762 (D.C. Cir.), *vacated and reh'g en banc granted*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025) ("*NTEU I*") (granting preliminary injunction to enjoin Defendant Vought's attempts to shut down the CFPB); *see also Nat'l Treasury Emps. Union v. Vought*, No. CV 25-0381 (ABJ), 2025 WL 3771192 (D.D.C. Dec. 30, 2025) ("*NTEU II*") (clarifying that the *NTEU* injunction requires Defendant Vought to request funding for the CFPB).

Page 3 -    PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
             SUMMARY JUDGMENT

personal interest captured by the standing doctrine ceases to exist at any point during the litigation." *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (citation modified). A "party asserting mootness bears the burden of establishing that there is no effective relief that the court can provide" due to some post-filing development. *Forest Guardians v. Johans*, 450 F.3d 455, 461 (9th Cir. 2006). This is a "heavy" burden, as "a case is not moot where *any* effective relief may be granted." *Id*. (citation omitted). Here, Defendants Vought and CFPB fall far short of meeting this burden.

As an initial matter, Defendants Vought and CFPB misconstrue the nature of Plaintiffs' case. Plaintiffs do not challenge a failure to request funding solely for the second quarter of FY 2026. Rather, they challenge two broader decisions by Defendant Vought, both of which he communicated in his November 20, 2025, letters to the President and Congress: (1) that he cannot legally request funding when the Federal Reserve's interest expenses exceed income, and (2) that he will not request funding for the *entirety* of FY 2026. *See* Br. at 3, 13–14 (identifying these actions as the "Challenged Decisions"); ECF No. 29-1 at 5–11 (notifying the President and Congress, pursuant to 12 U.S.C. § 5497(e)(1), that funding from the Federal Reserve "will not be sufficient to carry out the authorities of the [CFPB] under Federal consumer financial law *for Fiscal Year 2026*" and that "on the basis of" an Office of Legal Counsel ("OLC") opinion, the Director has determined "there are no funds legally available for the [CFPB] to request") (emphasis added). Requesting funds only for the second quarter of FY 2026 does not moot or resolve these claims. Indeed, Defendant Vought does not suggest that he has abandoned the Challenged Decisions, which will impact Plaintiffs as soon as April. At that point, the third quarter of FY 2026 will commence and, absent a further request for funding, Plaintiffs face a substantial risk of losing access to critical CFPB data.

To the extent Defendant Vought contends that Plaintiffs' claims are moot because the *NTEU* injunction places him under an obligation to "continue to request funds" after the second quarter, Opp'n at 1, 4, that argument contravenes clear precedent: it is well-established that the issuance of

Page 4 -   PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
           SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

a preliminary injunction that is subject to appeal does not moot a related suit seeking overlapping relief. As the Ninth Circuit has explained, "no court has adopted the view that an injunction imposed by one district court against a defendant deprives every other federal court of subject matter jurisdiction . . . ." *California v. HHS*, 941 F.3d 410, 421 (9th Cir. 2019), *vacated on other grounds*, 141 S. Ct. 192 (2020); *see also* Br. at 24, n.10 (collecting cases). And for good reason. First, "a case 'becomes moot only when it is *impossible* for a court to grant any effectual relief whatever to the prevailing party.'" *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025) (quoting C*hafin v. Chafin*, 568 U.S. 165, 172 (2013)) (emphasis added). That impossibility attaches only when relief ordered in another case is permanent and final, because so long as an injunction is subject to appeal or expiration—as is the case for the *NTEU* preliminary injunction—it can be extinguished. *See, e.g., N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 302 (4th Cir. 2020) (holding that a preliminary injunction in a separate case did not moot claim because the non-final nature of the injunction meant it was not "impossible" to grant effective relief). Second, even if a non-final injunction presumptively mooted a case, the dispute would fall within a well-recognized exception to the mootness doctrine because the lack of finality means there is "a reasonable likelihood that th[e] dispute will recur." *N. Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union, Loc. No. 60*, 685 F.2d 344, 346 (9th Cir. 1982) (holding that an NLRB preliminary injunction against picketing did not moot an action enforcing an arbitration award interpreting the picket-line clause in a collective bargaining agreement) (citation omitted); *see City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773, 788 (9th Cir. 2019) (holding that "even if an injunction from another court has a fully nationwide scope, we nevertheless retain jurisdiction under the exceptions to mootness for capable of repetition, yet evading review").

Thus, courts routinely hold that a dispute is not mooted by a district court order that "might be reversed by [the appellate court] or the Supreme Court." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998); *see also* Br. at 24 n.10 (collecting cases). That applies with even greater force to a *preliminary* injunction. Such an order cannot moot an overlapping request for relief

Page 5 -   PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
          SUMMARY JUDGMENT

because, by definition, it is of "limited duration" and "expire[s]" once a court "rules on the merits of th[e] case." *California*, 941 F.3d at 423 (holding that preliminary injunction of challenged federal policy does not moot separate challenge to the same policy); *see also Raymond*, 981 F.3d at 302 (rejecting mootness based on a preliminary injunction issued in a parallel action because the other court had not "ruled on the merits"); *United States v. Moi*, No. 3:19-cr-00112-TMB-DMS, 2021 WL 4048596, at *10 (D. Alaska June 7, 2021) (holding that a preliminary injunction issued in a parallel state court action did not moot claim because "[t]he state court did not reach a ruling on the merits of the case").

The posture of the *NTEU* suit starkly illustrates why a preliminary injunction subject to appeal in one case does not moot overlapping claims for relief in another. As Defendant Vought concedes, the *NTEU* injunction could be extinguished at any moment in light of his pending appeal to the D.C. Circuit. Opp'n at 4 (acknowledging that the injunction "will remain in place unless the *en banc* D.C. Circuit rules otherwise"). Indeed, a panel of the D.C. Circuit has already stayed the injunction but deferred implementation of the stay pending a decision from the *en banc* court, which heard oral argument just yesterday, February 24. Even if the *NTEU* injunction survives *en banc* review, it will be subject to vacatur or modification by the Supreme Court on appeal or, following full consideration of the merits, by the district court or appellate courts. Given the myriad possibilities that the *NTEU* injunction, like all district court preliminary injunctions, will prove transitory, it does not render it "impossible" for this "court to grant any effectual relief," *Gutierrez*, 606 U.S. at 320, and it leaves open a "reasonable likelihood that th[e] dispute will recur," *N. Stevedoring*, 685 F.2d at 346—both grounds for rejecting Defendant Vought's mootness argument.

Moreover, it would be especially improper for this Court to stay its hand based on the *NTEU* injunction because that injunction is based on entirely different legal claims and theories. *See Wright v. Guliani*, 230 F.3d 543, 547 (2d Cir. 2000) (holding that, "[a]lthough the relief granted in [another case] may remedy the conditions complained of here, [that] order does not purport to grant the precise relief sought by the plaintiffs in this case," rendering the current case "not moot");

Page 6 -    PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
                SUMMARY JUDGMENT

*Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 784 (11th Cir. 2018) (adopting *Wright*'s holding in a similar situation); *Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*, 219 F. Supp. 2d 1049, 1054 (C.D. Cal. 2002) (same); *see also Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 885 (9th Cir. 1992) ("Partial relief in another proceeding cannot moot an action that legitimately seeks additional relief."). The *NTEU* plaintiffs challenge a suite of actions taken by Defendant Vought, dating back to early 2025, that aimed to "shut down" CFPB—including orders to stand down on active work, cancel contracts, and terminate vast swaths of the workforce. *See NTEU I*, 774 F. Supp. 3d at 55–69. In response to these likely unlawful actions, the district court issued a sweeping preliminary injunction in March 2025 that, among other things, enjoined CFPB from engaging in a work stoppage and required them to continue performing certain statutory functions. *Id.* at 85–86. The court then issued an order in December 2025 making clear that the injunction barred Defendant Vought from refusing to request funding from the Federal Reserve, as that would "achieve[] the outcome of a work stoppage" and "undermine" the required performance of statutory functions. *NTEU II*, 2025 WL 3771192 at *7–8. Defendants Vought and CFPB's pending appeal of the underlying injunction to the D.C. Circuit is based on threshold jurisdictional arguments and factual and equitable considerations—that appeal does not address the merits of the Challenged Decisions in this case. *See* Appellant's Br. at v–vi, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Jan. 9, 2026) (opening brief table of contents). Thus, the injunction may be modified or vacated by the D.C. Circuit for reasons that simply have no bearing on the merits of Plaintiffs' challenge here.[2]

---

[2] Defendants Vought and CFPB also suggest that the *NTEU* injunction deprives Plaintiffs of standing and renders their claims unripe. Opp'n at 7. But courts addressing whether an order issued in another case renders a separate, previously filed case non-justiciable consistently analyze this based on the doctrine of mootness, the justiciability doctrine that applies to post-filing developments. *See, e.g., California*, 941 F.3d at 421–23; *Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locs. 13, 63, & 94*, 939 F.2d 866, 870 (9th Cir. 1991); *Wright*, 230 F.3d at 547; *Haynes*, 893 F.3d at 784; *Termine*, 219 F. Supp. 2d at 1054. Plaintiffs are unaware of any cases—and Defendants cite none—in which a court has held that a plaintiff loses standing or that their claims become unripe based on a post-filing order issued in another case. In

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

**B. The possibility that the Federal Reserve will have "combined earnings" in the future does not foreclose Plaintiffs' claims.**

Defendants Vought and CFPB get no further with their argument that Plaintiffs' claims are moot because "the Fed appears to have returned to profitability." Opp'n at 4. The mere possibility that the Federal Reserve may now or in the future turn a profit falls far short of meeting Defendants Vought and CFPB's burden to establish mootness.

As an initial matter, musings in legal filings aside, Defendant Vought has taken no action to rescind either of the Challenged Decisions. He fully stands by his determination that he cannot legally request funding when the Federal Reserve's interest expenses exceed its revenues, based on his interpretation of "combined earnings." Nor has he reversed his determination that he will not request funding for the entirety of FY 2026, absent judicial intervention, based on that interpretation. Indeed, he posits that he may "seek[] funds [only] *if* it is established that there are sufficient 'combined earnings' to draw from." Opp'n at 4 (noting that "forthcoming records" will illuminate whether the Federal Reserve "has returned to profitability") (emphasis added). Indeed, mere uncertainty about whether the Federal Reserve's future cash flows cannot moot Plaintiffs' claims because it does not make it "*impossible* for a court to grant any effectual relief whatever to the prevailing party.'" *Gutierrez*, 606 U.S. at 320 (emphasis added); *see also Charles v. Daley*, 749 F.2d 452, 456–57 (7th Cir. 1984) (holding that the defendant failed to meet its "heavy burden of persuasion" on mootness because the evidence offered was "speculative"). As of now, the Challenged Decisions remain live agency actions that continue to subject Plaintiffs to the substantial risk that, soon, Defendant Vought will—operating under the theories he defends in this case—decline to seek funding for the CFPB. The Court can grant "effective relief" that would protect Plaintiffs against this significant risk of injury by clarifying the meaning of § 5497(a).

But even if the Federal Reserve's supposed return to profitability were certain and had actually caused Defendant Vought to back down from his refusal to request funding or otherwise

---

any event, because of the non-finality of the *NTEU* injunction, there remains a "substantial risk," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), that Plaintiffs will be injured by the Challenged Decisions, fully satisfying Article III standing and related ripeness requirements.

Page 8 -   PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

eliminated Plaintiffs' substantial risk of future injury, Defendants Vought and CFPB's mootness argument would still falter on two well-established exceptions to the mootness doctrine: action that is capable of repetition yet evading review, and voluntary cessation. Either one of these exceptions defeats a mootness argument; here, both apply.

To begin, this is a paradigmatic case of "a controversy that is capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (citation omitted). This mootness exception applies when: (1) "the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *City of L.A. v. Barr*, 929 F.3d 1163, 1172–73 (9th Cir. 2019) (citation modified); *see also Planned Parenthood v. HHS*, 946 F.3d 1100, 1109 (9th Cir. 2020) (injury is capable of repetition yet evading review if one can "reasonably expect to be subject to the same injury again" and the injury is "of a type inherently shorter than the duration of litigation"). Here, both prongs are readily satisfied.

First, Defendant Vought is obligated to request funding for the CFPB at least every three months, a period the Supreme Court has held is "too short to complete judicial review" of the lawfulness of an agency's action. *FCC v. Consumers' Rsch*, 606 U.S. 656, 671 n.1 (2025) (citation omitted). The Ninth Circuit is in accord. *See City of L.A.*, 929 F.3d at 1172 (holding that the closure of a grant cycle did not moot challenges to grant awards where "fewer than three months passed between DOJ's announcement of the scoring factors and the grant awards"); *Wallingford v. Bonta*, 82 F.4th 797, 801 (9th Cir. 2023) ("[A]ctions lasting more than two years are frequently considered long enough to be fully litigated prior to cessation, while actions lasting less than two years are considered too short."). Thus, even if it were clear that Defendant Vought will request, at some point before April, funds for the third quarter of FY 2026 based on his assessment of the Federal Reserve's current profitability, Plaintiffs would soon face the risk of a lapse in funding for the next three-month period beginning in July. Such a short three-month cycle is precisely the kind of "controversy" that is "too short to be fully litigated prior to cessation of expiration" that the

Page 9 -    PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
            SUMMARY JUDGMENT

"capable of repetition yet evading review" exception is meant to address. *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (citation modified).

Second, the Federal Reserve's income and interest expenses vary on a daily basis, meaning that there is more than a "reasonable expectation" that Defendant Vought's interpretation of "combined earnings" will eventually result in a denial of funding to the CFPB. *See California*, 941 F.3d at 423 (noting that the standard "does not demand certainty"). Indeed, it is not at all clear that the Federal Reserve has returned to profitability as of today, much less that it will remain profitable in advance of the third or fourth quarter of FY 2026 or beyond that. Defendant Vought points to the reduction in the Federal Reserve's deferred asset for the week ending February 5 as supposed evidence of its current profitability, but this cherrypicked data point ignores the volatility of changes in the size of the deferred asset. In the 13 weeks since Defendant Vought's November 20 letter announcing that he cannot legally request funds from the Federal Reserve, the size of the deferred asset has bounced up and down—increasing in six weeks and decreasing in seven weeks, with no discernible pattern. Second Thompson Decl. Ex. 1.[3] This ping-ponging in the Federal Reserve's balance sheets over the past three months confirms the "reasonable expectation" that Plaintiffs will "be subject to the same action again," *City of L.A.*, 929 F.3d at 1172–73—*i.e.*, that Defendant Vought will not seek funding for a given quarter in the future, subjecting Plaintiffs to the range of injuries that would result from a lapse in CFPB funding.

Moreover, it is not clear that under Defendant Vought's theory, a reduction in the deferred asset at any particular point in time shows that the Federal Reserve has "combined earnings." Among the many problems with Defendant Vought's interpretation of "combined earnings" is that it fails to identify the relevant time period for assessing profitability. For example, as of his

---

[3] The Federal Reserve reported a decrease in the deferred asset as of November 26; December 3, 17, and 24; and February 4 and 11, which suggests profitability during those periods, and reported an increase in the deferred asset as of December 10 and 31; January 7, 14, 21, and 28; and February 18, which suggests the Federal Reserve's expenses exceeded its income. *See* Second Thompson Decl. Ex. 1 (showing change in deferred asset from November 5, 2025, through February 18, 2026); *id.* Ex. 2.

Page 10 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
         SUMMARY JUDGMENT

November 20 letter to Congress, Defendant Vought had decided that the Federal Reserve lacked combined earnings, but at that time, the Federal Reserve's weekly balance sheets showed a similar reduction in the deferred asset from $243.4 billion on November 19, 2025, to $243.2 billion on November 26, 2025. Second Thompson Decl. Ex. 2 at 8, 11. The volatility of the deferred asset and the uncertainty as to how it actually bears on Defendant Vought's calculation of "combined earnings" confirm that there is a "reasonable expectation" that Defendant Vought will, at some point in the future, refuse to request funding, imposing substantial injuries on Plaintiffs.

Separately, the voluntary cessation exception defeats any argument that Plaintiffs' claims are moot. Under that exception, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation modified). Were it otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating the cycle until he achieves all of his unlawful ends." *Already LLC v. Nike*, 568 U.S. 85, 91 (2013). Only if the party asserting mootness meets its "heavy burden" to prove that "subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur" will a case be moot. *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). And where a defendant "vigorously defends the legality of [its] approach," that counsels against a finding of mootness. *West Virginia v. EPA*, 597 U.S. 697, 720 (2022) (citation modified).

For the same reasons that the controversy is capable of repetition, Defendants Vought and CFPB cannot meet the heavy burden of showing that it "could not be reasonably expected to recur": the Federal Reserve's balance of income and expenses varies from week to week. Plaintiffs have absolutely no assurance that Defendant Vought will not conclude that the Federal Reserve lacks combined earnings in advance of the third or fourth quarter this year simply because its deferred asset shrank for the week ending February 5. Indeed, Defendants Vought and CFPB seem

Page 11 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
        SUMMARY JUDGMENT

to acknowledge this in their brief, suggesting that the question of profitability "may" be informed by the Federal Reserve's "forthcoming" production of certain records. Opp'n at 4. Relying on the theoretical possibility that as-yet-unproduced records will establish the Federal Reserve's profitability is a far cry from establishing that the Federal Reserve's purported lack of combined earnings "could not reasonably be expected to recur."

Defendants CFPB and Vought's ongoing and vigorous defense of the merits of the Challenged Decisions further underscores the applicability of the "voluntary cessation" exception. Not only do they defend those decisions here, but they have reiterated their position in public statements and other pending lawsuits. *See, e.g.*, Def. Opp'n to Mot. Summ. J. at 14–24, *Rise Economy v. Vought*, No. 5:25-cv-10481 (N.D. Cal. Jan. 16, 2026), ECF No. 34 (defending the merits of the Challenged Decisions); Def.'s Notice at Ex. A, *Nat'l Treasury Employees Union et al., v. Vought et al.*, No. 1:25-cv-381 (D.D.C. Dec. 16, 2025) ECF No. 164 (seeking an opinion from the Federal Reserve about whether the Federal Reserve System presently has or will soon have "combined earnings" under the OLC's definition); Press Release, CFPB, CFPB Notifies Court It Cannot Lawfully Draw Funds From the Federal Reserve (Nov. 11, 2025), https://www.consumerfinance.gov/about-us/newsroom/cfpb-notifies-court-it-cannot-lawfully-draw-funds-from-the-federal-reserve/ [https://perma.cc/QPM6-F93Z]. Their refusal to abandon their position makes it highly unlikely that Defendants CFPB and Vought will cease the Challenged Decisions or agree to request funding whenever they conclude that the Federal Reserve lacks "combined earnings" under CFPB's newfound interpretation of that phrase. *See Armster*, 806 F.2d at 1359 (holding that "the likelihood of recurrence of challenged activity is more substantial when the cessation is not based upon a recognition of the initial illegality of that conduct," which "counsels strongly in favor" of rejecting mootness).

Finally, Defendants Vought and CFPB's argument that the Federal Reserve's potential "return[] to profitability" deprives Plaintiffs of standing and renders their claims unripe, Opp'n at 7, is incorrect. As an initial matter, the impact of post-filing developments on justiciability is

Page 12 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
         SUMMARY JUDGMENT

properly analyzed under the "doctrine of *mootness*, not standing," as mootness "addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'" *West Virginia*, 597 U.S. at 719 (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)) (emphasis in original); *see also Union Gospel Mission of Yakima Wash. v. Brown*, 162 F.4th 1190, 1199 (9th Cir. 2026) (interpreting a party's arguments as "grounded in mootness doctrine" because they relied on events that occurred after the action was filed). The impact of recent and future developments has no bearing on whether Plaintiffs had standing to file suit, and for the reasons set forth above, they do not establish mootness either.

As for constitutional ripeness, that simply "overlaps with the analysis of 'injury in fact' for Article III standing." *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025). The "distinction" between justiciability doctrines that are considered as of the time the complaint is filed and mootness "matters because the [defendant], not [plaintiff], bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719. Defendants Vought and CFPB cannot escape this burden by packaging the Federal Reserve's potential for future profitability as a matter of standing or ripeness. But even if it were appropriate to analyze this issue through those doctrines, Defendants Vought and CFPB's speculation about the Federal Reserve potentially "returning to profitability" would not foreclose standing or ripeness. A plaintiff has a concrete "injury-in-fact" where they show that they face a "'substantial risk'" of future injury resulting from a challenged action. *Driehaus*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013)). Given Defendants' steadfast commitment to their interpretation of "combined earnings" and the volatility of the Federal Reserve's profitability, as detailed above, Plaintiffs undoubtedly meet this standard.

**C. The prudential mootness doctrine does not foreclose Plaintiffs' claims.**

Defendants Vought and CFPB get no further with their prudential mootness argument. *See* Opp'n at 4–5. As a threshold matter, the *en banc* Ninth Circuit has clearly stated that the court "ha[s] not adopted prudential mootness per se," only ever applying the doctrine "in the bankruptcy

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

context." *Maldonado v. Lynch*, 786 F.3d 1155, 1161 n.5 (9th Cir. 2015) (en banc). Indeed, the Ninth Circuit has expressly rejected reliance on *Chamber of Commerce v. Department of Energy*, 627 F.2d 289 (D.C. Cir. 1980)—to which Defendants Vought and CFPB point—and other similar out-of-circuit "prudential mootness" cases. *See Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (citing *Chamber of Commerce* as an example of prudential mootness, holding that the Ninth Circuit was "not required" to adopt its conclusion, and questioning whether the Ninth Circuit even "ha[s] the discretion to dismiss [a] case" as "anticipatorily moot").[4]

Even if applicable in this Circuit, the prudential mootness doctrine would not apply here because none of the allegedly changed circumstances "forestall any occasion for meaningful relief." *Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) (quotation marks omitted). Defendants rely on their requesting and obtaining second quarter funding from the Federal Reserve in January 2026. But the instant action focuses on whether the CFPB will continue to make such requests, not merely whether the agency has sufficient funding at this exact moment. As explained above, Defendants Vought and CFPB have not modified their underlying determination that they cannot and will not request funds from the Federal Reserve when they determine that the central bank lacks "combined earnings." The temporary second quarter funding, which was secured only pursuant to a court order in another case that could be stayed at any moment, says nothing about whether Defendant Vought will request third or fourth quarter funding. Prudential mootness thus does not prevent this Court from providing a meaningful remedy.

---

[4] Separate from prudential mootness, prudential ripeness also does not bar this suit. That doctrine "turns on two considerations (1) the fitness of the issues for judicial decisions and (2) the hardship to the parties of withholding court consideration." *Flaxman v. Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025) (citation modified). On the first consideration, "pure legal questions that require little factual development are more likely to be ripe." *Id.* This is true here, present before the court is a question of statutory interpretation ripe for judicial review and determination. The second consideration "dovetails, in part, with the constitutional consideration of injury." *Planned Parenthood Great Nw. Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F. 4th 825, 840 (9th Cir. 2024). This consideration is also met here, see *infra* Part I.E for discussion on standing injury.

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

None of the cases that Defendants Vought and CFPB cite suggest otherwise. In *A.L. Mechling Barge Lines, Inc. v. United States*, the Supreme Court dismissed a case as moot, but only after finding it "significant" that the state actor had affirmatively "conceded" that its actions were in violation of the law and "amended its practice accordingly." 368 U.S. 324, 330 (1961). Defendants Vought and CFPB have made no such concession here and have done nothing to rescind the Challenged Decisions. Indeed, because Defendant Vought has not promised to request funding for FY 2026 or any time thereafter, there exists a "continuing practice[] whose validity [Plaintiffs] would have [the Court] adjudicate." *Id.* at 330-31 (quotation marks omitted).at 330–31. *National Wildlife Federation v. United States*, 626 F.2d 917 (D.C. Cir. 1980), is equally inapposite; there, the D.C. Circuit explicitly held that it did "not base [its] decision" on mootness. *Id*. at 926. And although the court suggested that disagreements implicating the federal budget are best left to "bargaining and accommodation between the legislative and executive branches," *id.* at 924, that general doctrine of restraint is inapplicable here, where Congress exempted the CFPB from the annual appropriations process and thus conceded any consistent legislative role in negotiating the CFPB's funding. *See CFPB v. Comm'ty Fin. Servs. Assoc. of Am.*, *Ltd.*, 601 U.S. 416, 420 (2024). Finally, *Chamber of Commerce* is likewise distinguishable. In that case, during the pendency of the plaintiffs' challenge to a Department of Energy funding decision, Congress "imposed a moratorium on [the challenged funding decision]" and the Department had "decided to stay further action on [the challenged funding decision] pending prior congressional approval." 627 F.2d at 291. By contrast, Defendant Vought has not indicated that the Challenged Decisions here have been "withdrawn or [are] undergoing substantial revision"; instead, even now, Defendant Vought defends his decision not to request funding based on his novel interpretation of "combined earnings" as legally permissible.

### D.  Finding for Plaintiffs would not amount to prejudicial error.

Defendants Vought and CFPB's prejudicial-error argument likewise falls flat. *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 588 (2025) (explaining that the prejudicial-error

Page 15 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

rule imports the harmless-error rule to the APA). In applying this rule, courts consider whether the error "clearly had no bearing on the procedure used or the substance of the decision reached." *California Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011) (citation modified). This argument just repackages Defendants Vought and CFPB's mootness argument. Defendants Vought and CFPB claim that their errors are harmless because they ultimately requested funding last quarter, Opp'n at 27, but they omit that they did so only by court order and that they refuse to commit to making future funding requests. If Defendant Vought is permitted to defund the CFPB, as he seeks to do, his APA violations are not a "harmless" error.

### E.  Defendants' other arguments that Plaintiffs lack standing fail.

Defendants Vought and CFPB's other standing arguments fare no better. First, their argument that Plaintiffs' informational harm does not suffice for standing is incorrect. Opp'n at 10. "A plaintiff sustains a cognizable informational injury in fact when agency action cuts [plaintiff] off from 'information which must be publicly disclosed pursuant to a statute.'" *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 867 (9th Cir. 2019) (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)). Here, Defendants Vought and CFPB admit, as they must, that 12 U.S.C. § 5493(b)(3)(d) plainly demands that the agency operate a database to collect consumer complaint information and provide that information to Plaintiffs. Opp'n at 10. Plaintiffs have thus demonstrated a sufficient informational injury for standing purposes, especially because the loss of information "affects [their] ability to enforce state laws." *Nat. Res. Def. Council, Inc. v. EPA*, 961 F.3d 160, 169 (2d Cir. 2020) (citation modified); *see also Rhode Island v. Trump*, 155 F.4th 35, 44 (1st Cir. 2025) (finding standing where the plaintiff states "have been and will continue to be injured by the defendants' failure to provide services on which the plaintiffs rely").

Defendants Vought and CFPB's baseless argument about a timeframe for providing information ignores how the Challenged Decisions would disrupt the ongoing work required to maintain the Consumer Response System and impair Plaintiffs' consumer protection work. Opp'n at 10. Refusing to fund the agency would result in the termination of not only staff, but also

contracts required to keep the Consumer Response System running. Meyer Decl. ¶¶ 22–30. Without these resources, the system "would immediately collapse," preventing individuals from lodging complaints in the system, much less sharing that information with Plaintiffs. *Id.* The Challenged Decisions thus deprive Plaintiffs of a necessary tool they rely on and injure their sovereign interest in enforcing their own consumer protection laws. *See* Br. at 16–19.

Rather than addressing the actual issue, Defendants Vought and CFPB instead attack Plaintiffs' standing by pointing to 12 U.S.C. § 5496, a separate statute that mandates semi-annual appearances and reports to Congress. Opp'n at 8. But Plaintiffs do not allege any harm stemming from a violation of § 5496, nor even reference it in their brief, rendering Defendants' argument here irrelevant.

Defendants Vought and CFPB similarly argue that Plaintiffs are not injured by the loss of statutorily required HDMA data because Plaintiffs "admit" that the data is published in March and because other agencies are involved in the process of collecting said data. Opp'n at 9. This proves, according to Defendants, that Plaintiffs' harm stemming from the lost HDMA data is too attenuated from their challenged decision to refuse to fund CFPB. *Id.* But Defendants are wrong several times over. Plaintiffs acknowledged in their Brief that covered institutions must report their HDMA data *to the Federal Government* by March. Br. at 17 (citing 12 C.F.R. § 1003.5(a)(1)). But the publication of that data *to the States and the public* does not occur until the summer. *See* Thompson Decl. Ex. 21 at ECF No. 29-21. And Defendants Vought and CFPB conveniently ignore that they are a part of the interagency body charged with compiling HMDA data. Opp'n at 9. Without the CFPB's data, the interagency body cannot accurately report HMDA data from institutions with assets over $10 billion. *See* Federal Financial Institutions Examination Council, *A Guide to HMDA Reporting: Getting It Right!*, Appx. J (Jan. 1, 2024) ("The CFPB will process the HMDA data for the Federal HMDA reporting agencies and the FFIEC, and prepare and make available data products to the general public on behalf of the FFIEC and the Federal HMDA reporting agencies."). In other words, not only will the data be incomplete due to Defendant Vought's refusal

Page 17 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
         SUMMARY JUDGMENT

to fund CFPB, it is also unlikely the data will be reported at all because the CFPB is statutorily mandated to "provide staff and data processing resources" to carry out the compiling and analysis of HDMA data for public dissemination. 12 U.S.C. § 2809(b). Because Defendant Vought's refusal to fund CFPB would preclude the agency from performing its ongoing obligations related to Consumer Response System complaints and HDMA that Plaintiff states rely on, Plaintiffs have suffered an injury in fact sufficient for standing.

Defendants Vought and CFPB further suggest that Plaintiffs lack standing because the CFPB could "again submit a report to Congress pursuant to § 5497(e)," Opp'n at 7, apparently implying that Plaintiffs' harms may not materialize if Congress elects to provide additional funding to the agency. But standing is not lost based on rank speculation that Congress may later take unspecified action to alleviate the injury. *See Duke Power Co. v. Carolina Env't Study Grp., Inc.,* 438 U.S. 59, 75–78 (1978) (plaintiffs need not "negate . . . speculative and hypothetical possibilities" that relief would be mooted by other developments in the future to show redressability). Moreover, Defendants Vought and CFPB's baseless speculation ignores the reality that "unlike most other agencies, the CFPB does not rely on the annual appropriations process" but instead "receives funding directly from the Federal Reserve." *Seila Law LLC v. Consumer Fin. Protect. Bureau*, 591 U.S. 197, 207 (2020). And even if Defendants Vought and CFPB submitted such a report following a lapse in funding, Plaintiffs would still suffer injury from lost access to statutorily required information at least in the interim, were Congress to take the unprecedented step of directly appropriating funds to the CFPB.[5]

---

[5] Equally unpersuasive is Defendants Vought and CFPB's claim, without elaboration, that Plaintiffs lack standing because the Antideficiency Act "may" require the CFPB to perform certain unspecified obligations during a lapse in funding. Opp'n at 7. But again, such speculation does not undercut the injuries Plaintiffs have identified, *see* Br. at 15–19. If anything, the Antideficiency Act's requirements mean the CFPB is less likely to fulfill its mandatory duties that Plaintiffs rely on in the event of a self-induced lapse in funding, because as Defendant Vought acknowledged in *NTEU*, "the Act generally prohibits agency heads and their employees . . . from working, even on a voluntary basis, except in very limited circumstances involving" emergencies. Defs' Notice of Potential Lapse In Appropriations to Pay the Expenses of the Bureau 1, *NTEU v. Vought*, 25-cv-00381 (D.D.C. Nov. 10, 2025) (ECF No. 145 at 1).

Page 18 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
        SUMMARY JUDGMENT

## II.    Separate Litigation by Separate Plaintiffs in Separate Jurisdictions Does Not Warrant Dismissal or Transfer of This Action

Defendants Vought and CFPB contend that this Court should either dismiss or transfer the case to "avoid duplicative litigation and gamesmanship" because (1) "the issue raised in the complaint is 'identical' to the one" in *NTEU* and *Rise* and (2) the "interests of justice" require it. Opp'n at 10–12. Yet Defendants Vought and CFPB fail to meet their burden to overcome the deference owed to Plaintiffs' forum choice. *See Bibo v. Federal Exp., Inc.*, No. C07-2505 THE, 2007 WL 2972948, at *2 (N.D. Cal. Oct. 10, 2007) ("[D]efendant must make a strong showing of inconvenience to warrant upsetting plaintiff's choice of forum.").

### A.    The first-to-file rule does not require dismissal.

Under the Ninth Circuit's "first-to-file" rule, district courts may, in their discretion, dismiss, transfer, or stay an action "if the same parties and issues are already at issue in a proceeding before another district court." *Behring Reg'l Ctr., LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 1164839, *1 (N.D. Cal. Mar. 26, 2021). Applying that rule, the "court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Here, the factors weigh against dismissal, transfer, or stay.

First, the parties are not the same. Of the 26 parties to the present lawsuit—23 plaintiffs and 3 defendants—only 2 defendants overlap with the *NTEU* lawsuit or *Rise Economy v. Vought*, 5:25-cv-10481 (N.D. Cal.): Defendants Vought and CFPB. *See Behring*, 2021 WL 1164839, at *2 ("Defendants have not identified any case . . . where a court transferred a case under the first-to-file rule when there was no overlap in parties on one side of the 'v.'").

Second, the issues in this case and *NTEU* do not "substantially overlap." *Kohn Law Grp.*, 787 F.3d at 1237, 1241. The *NTEU* plaintiffs broadly "challenged decisions made and actions taken by the defendants to carry out President Trump's vow to have the CFPB 'totally eliminated.'" 2025 WL 3771192, at *1. Although the issue of CFPB funding came up in *NTEU* when the district court clarified its preliminary injunction, *see id.* at *11–17, it is not before the *en banc* D.C. Circuit,

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

where oral arguments were held yesterday, and will not be finally resolved for some indeterminate length of time (if ever) in that case. *See* Appellant's Br. at v–vi, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Jan. 9, 2026).[6] The first-to-file rule therefore does not apply for the separate reason that *NTEU* and this case does not present substantially overlapping issues.

Third, the legal issues presented in this litigation are substantially dissimilar from those presented in the *Rise Economy* case. Here, unlike in *Rise Economy*, Plaintiffs have a 5 U.S.C. § 706(1) claim, and also have the Federal Reserve as a named defendant. Furthermore, Defendants Vought and CFPB have not shown it is practical to consolidate these cases. In *Rise Economy*, summary judgment has been fully briefed and the court held a hearing on that motion on February 11, 2026. *Cf. Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, No. CV10-1366-SU, 2011 WL 1706216, at *4 (D. Or. May 5, 2011) (transferring under § 1404 where parties were "identical" and it was "feasib[le]" to consolidate actions in advance of the first case's summary judgment deadline).

**B. The interest of justice does not require transfer.**

Nor should this Court transfer this case to the District of Columbia "in the interest of justice" under 28 U.S.C. § 1404(a). Opp'n at 11–12. Defendants Vought and CFPB cite "gamesmanship" and cases involving "forum shopping" in support of transfer, but they fail to satisfy their significant burden to demonstrate that those problems are present here and warrant transfer. Although district courts may transfer a case because plaintiffs have engaged in forum shopping for favorable state law or to manufacture diversity jurisdiction, neither concern exists here. Plaintiffs are not trying to avoid a hostile forum via "gamesmanship"—the *NTEU* district court has preliminarily decided the § 5497(a) issue *adversely* to the defense. 2025 WL 3771192, at *12–16. And Defendants Vought and CFPB have not provided the Court with any valid basis to

---

[6] Defendants' counsel has recently stated this case and the pending *NTEU* appeal are not related. Appellant's Br. at iii, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Jan. 9, 2026) (counsel's representation that they are "aware of no other related cases currently pending in this Court or in any other court").

Page 20 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
              SUMMARY JUDGMENT

conclude the D.C. District Court would find this case and *NTEU* related under that court's Local Rule 40.5(a)(3)—particularly given that the *NTEU* suit challenges a much broader effort to dismantle the CFPB rather than the discrete agency actions at issue here. *See Bibo*, 2007 WL 2972948, at *4 (denying transfer, in part, because it was "speculative" whether transferee court would relate the relevant actions).[7] For these reasons as well as those above, Defendants have not met their "significant burden" to show transfer is warranted.

### III.    Plaintiffs Are Entitled to Summary Judgment on Their Contrary to Law and Delayed Agency Action Claims

#### A.    Defendants Vought and CFPB's decision to not seek funding from the Federal Reserve is final agency action.

As explained in Plaintiffs' opening brief, the Challenged Decisions are final agency action that will, if left intact, "result in the complete defunding of the CFPB as soon as April 2026," which in turn will "cut[] off Plaintiffs' access to statutorily mandated resources." Br. at 19–20. Defendants Vought and CFPB attempt to avoid the conclusion that the Challenged Decisions are final agency action by imagining that Plaintiffs are challenging counsel's notice to the court in the *NTEU* litigation as the relevant action. Opp'n at 12–13 (quoting from the notice rather than Defendant Vought's letters attached as exhibits thereto). Although counsel's notice in *NTEU* was certainly couched in cautious and indefinite language, Defendant Vought's letters to Congress were not. *See* ECF No. 29-1 at 4 ("I have determined that the sums available to the Bureau under 12 U.S.C. § 5497(a) will not be sufficient . . ."; "[a]ny funding needs of the Bureau will necessarily exceed the amount currently available for the Bureau to request under 12 U.S.C. § 5497, which is legally $0"). In the letters to the President and Congress at issue here, Defendants Vought and the

---

[7] Defendants Vought and CFPB's additional cited cases are not on point. *See Haynes v. World Wrestling Ent., Inc.*, No. 3:14-cv-01686-ST, 2015 WL 3905281, *3–5 (D. Or. June 25, 2015) (transfer pursuant to § 1404 where "many of the putative class members are subject to mandatory forum selection clauses requiring disputes to be resolved in" transferee court); *Ward v. Lime Fin. Servs., Ltd.*, No. CV.08-840-AC, 2009 WL 10692461, *3 (D. Or. Jan. 15, 2009) (transfer under § 1404 where "contracts [giving rise to the suit] were executed and the security interests were recorded" in transferee forum state and court found plaintiffs had attempted to avoid "unfavorable precedent" in transferee court).

Page 21 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

CFPB unambiguously embraced OLC's interpretation of 12 U.S.C. § 5497(a) and refused to seek agency funding as a result. Those are the Challenged Decisions, not defense counsel's lawyerly descriptions of those decisions. Indeed, the OLC opinion made clear that Defendants Vought and CFPB had already concluded that their "source of funding-the combined earnings of the Federal Reserve-has been exhausted." ECF No. 68-3 at 9. OLC simply provided a "formal opinion" endorsing CFPB's conclusion. *Id.*; *see also Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 698 (D.C. Cir. 1971) ("The term 'agency action' thus embraces an[] agency's interpretation of its law, and it is the finality of that action that we must consider.").

Defendants Vought and CFPB's reliance on their compliance with the preliminary relief ordered by the court in *NTEU* does not render the Challenged Decisions non-final. Defendants Vought and CFPB disclaim as much, and instead promise that, consistent with the Challenged Decisions, they "will, in accordance with the OLC opinion and § 5497, continue seeking funds *if it is established that there are sufficient 'combined earnings' to draw from*." Opp'n at 4 (emphasis added).

Defendants Vought and CFPB's reliance on *Public Citizen v. Bowen*, 833 F.2d 364 (D.C. Cir. 1987), is misplaced. In *Public Citizen*, the "later proceedings" that rendered the already non-final action at issue there even less final was the result of the agency's own deliberations: the Food and Drug Administration had issued a notice of proposed rulemaking, and twice reopened the comment period in response to various developments. *Id.* at 365–66. Here, the only subsequent action that Defendants Vought and CFPB contend renders the Challenged Decisions non-final is the *NTEU* court order, with which Defendant Vought complied under protest. *See* ECF No. 29-20 at 4 ("Although I disagree with the opinion and order of the District Court . . ."). Far from establishing that non-final "mental processes or abstract plans of an agency head" continue apace, Opp'n at 14, Defendant Vought's reluctant compliance is just further evidence that, but for a court order, he would cripple the CFPB's ability to perform its legally required work by "refus[ing] to request funding" for the congressionally created agency he is obligated by statute to prudently

Page 22 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
            SUMMARY JUDGMENT

manage. *Id.* at 19-20 (arguing that Defendant Vought has "discretion to refuse to request funding" for the congressionally created agency he is obligated by statute to prudently manage).

**B.  Defendants Vought and CFPB's interpretation of "combined earnings" has no basis in the text or history of the CFPB's organic statute.**

In their opening brief, Plaintiffs demonstrated that the term "combined earnings" as used in 12 U.S.C. § 5497(a)(1) clearly and naturally refers to the total revenue of the Federal Reserve without deduction of expenses. Br. at 21–23. In response, Defendants Vought and CFPB parrot the legal conclusions from the OLC opinion that Plaintiffs have already roundly debunked. Opp'n. at 20–24. In doing so, Defendants Vought and CFPB (1) fail to point to *any* dictionary definitions that support their interpretation; (2) try to write off the consistent manner in which "earnings" is used throughout the Dodd-Frank Act; and (3) argue that Congress simply made a mistake in assuming that the Federal Reserve would always be profitable, and thus serve as a stable source of income for the CFPB.

First, Defendants Vought and CFPB incorrectly claim that the second definition of "earnings" in the Merriam-Webster dictionary supports their adoption of OLC's definition of "combined earnings." Opp'n at 21. It does not. Defendants Vought and CFPB do not contend that "earnings" means "the balance of revenue after deduction of costs and expenses" in keeping with Merriam-Webster—rather, they argue that "earnings" means "profits, calculated by *subtracting its interest expenses* from its revenues." *Id.* (emphasis added). There is no definition of revenue, earnings, or profit in any dictionary—technical or otherwise—that Defendants Vought and CFPB can point to that so specifically excludes a single category of expenses from revenues generated. *See NTEU II*, 2025 WL 3771192, at *14.

Second, Defendants Vought and CFPB contend that Congress could not have intended "combined earnings" to mean "combined revenues" when "revenues" is used elsewhere in the Dodd-Frank Act. Opp'n at 21–22. But that reasoning would defeat Defendants' own argument that "combined earnings" means some type of "profit" or "net profit" because Congress likewise used those and other similar terms separately in the Dodd-Frank Act. *See, e.g.*, Dodd-Frank Wall Street

Page 23 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
        SUMMARY JUDGMENT

Reform and Consumer Protection Act, Pub. L. 111-203, 123 Stat. 2059 (2010), codified at 15 U.S.C. §§ 1691c-2(h)(5)(B) and (6)(B) (providing a "net profit" requirement for certain women- and minority-owned businesses); *id.* 123 Stat. 1514, codified at 12 U.S.C. § 5390(s)(3) (defining "compensation" to mean, among other things, "any profits realized from the sale of the securities of the covered financial company"); *id.* 123 Stat. 1630, codified at 12 U.S.C. § 1851(h)(6) (discussing "profit from short-term price movements"); *id.* 123 Stat. 1457, codified at 12 U.S.C. § 5385(d)(2) (defining "net proceeds").

Third, Defendants Vought and CFPB proffer an interpretation of the Dodd-Frank Act's legislative history in support of their position. Opp'n at 22–24. But "no amount of guesswork about the purposes behind legislation can displace what the law's terms clearly direct." *Martin v. United States*, 605 U.S. 395, 408 (2025); *see also Food Mkt. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (legislative history cannot "be used to muddy the meaning of clear statutory language" (citation and internal quotation marks omitted)). For all the reasons provided herein and in Plaintiffs' opening brief, the clear and plain meaning of "combined earnings" in § 5497(a)(1) is all money received by the Federal Reserve without deduction of any expenses.

In any event, the legislative history supports Plaintiffs' position. As originally introduced in the House, what ultimately became § 5497(a)(1) provided that the Federal Reserve would "transfer funds in an amount equaling 10 percent of the Federal Reserve System's total system expenses" to the CFPB without specifying one way or the other the source of that funding. H.R. 4173 § 4109(a)(1) (Dec. 2, 2009). As written, the CFPB's Director would have no role in determining the CFPB's funding needs, and instead Congress would have set the CFPB's annual budget in stone. Instead of this rigid approach, and perhaps recognizing the "need[] to designate particular revenues for identified purposes," *Comm'ty Fin. Servs. Assoc.*, 601 U.S. at 416, 417, Congress ultimately opted to give the CFPB Director the discretion to determine an amount "reasonably necessary to carry out the authorities of the Bureau," to be drawn from the Federal Reserve's "combined earnings," and to cap the amount available to the CFPB at a percentage of

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

the Federal Reserve's total operating expenses. 12 U.S.C. §§ 5497(a)(1) and (2). Far from demonstrating that Congress "limit[ed] the source of § 5497(a)(1) funding to Federal Reserve System profits as opposed to total system expenses," Opp'n at 23, the changes simply identified a source of funding, while also giving the CFPB Director a role in determining the amounts necessary to carry out the mission of the agency he or she leads.

Defendants Vought and CFPB freely concede that their interpretation of § 5497(a)(1) is at odds with Congress's clear intent to provide "a reliable source of plentiful funds," Opp'n. at 23 (quotation marks omitted), and depends on an understanding that Congress erroneously "believed" it was doing so by providing the CFPB with funding from the Federal Reserve's combined earnings. *Id.* at 23–24. The Court should reject Defendants Vought and CFPB's interpretation, which flies in the face of the plain language and intent of § 5497(a)(1).

### C. Plaintiffs have a meritorious claim for agency action "unlawfully withheld" under 5 U.S.C. § 706(1).

Plaintiffs challenge Defendant Vought's decision not to request FY 2026 funding for the CFPB under 5 U.S.C. § 706(1) as agency action "unlawfully withheld."[8] Defendants wrongly assert that Plaintiffs do "not seek to compel a discrete agency action." Opp'n at 17. To the contrary, Plaintiffs' § 706(1) claim seeks to compel Defendant Vought to request funds for FY 2026—including the third and fourth quarters of the year. Defendant Vought made clear in his November 20, 2025, letters to the President and Congress that he had no intention of seeking funds for the remainder of FY 2026. *See* ECF No. 29-1 at 4 (notifying the President and Congress, pursuant to 12 U.S.C. § 5497(e)(1), that funding from the Federal Reserve "will not be sufficient to carry out the authorities of the [CFPB] under Federal consumer financial law *for Fiscal Year 2026*" because "there are no funds legally available for the [CFPB] to request") (emphasis added). Indeed, he requested funds for the second quarter solely because of a court order in another case that could

---

[8] Defendants Vought and CFPB argue that Plaintiffs do not have a viable § 706(1) claim based on agency action "unreasonably delayed," Opp'n at 24, but Plaintiffs do not assert such a claim. *See* Br. at 23–27.

Page 25 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
          SUMMARY JUDGMENT

be stayed at any moment. The refusal to request funds for the remainder of FY 2026 is both "circumscribed" and "discrete"—as it involves particular failures to act over a defined period of time—and is therefore subject to APA review. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

Defendants Vought and CFPB's primary claim seems to be that 12 U.S.C. § 5497(a)(1) does not require the Director to actually do anything. And they begin by noting that "the statute places the duty to transfer funds on the Fed rather than the CFPB Director." Opp'n at 18. But no one disputes that the Federal Reserve has the duty to *transfer*. The issue is whether the Director has a duty to convey to the Federal Reserve the amounts that need to be transferred. On that point, Defendants Vought and CFPB first argue that the statute does not impose a "specific, unequivocal command" on the Director. *Id.* at 18–19. But as explained in Plaintiffs' opening brief, the CFPB funding statute necessarily imposes an affirmative obligation on the Director to take action to secure funds. Br. at 23–27. Indeed, it would be impossible for the statutorily mandated transfer to occur if the Director did not identify CFPB's funding needs to the Federal Reserve. The fact that the Board of Governors is the subject of the statute's "shall" sentence does not relieve the Director of his necessary role in the mandated transfer. Where the statutory context makes clear that a mandatory directive requires execution by a particular agency, that is enough to find that the law imposes a legal requirement on the agency. *See, e.g.*, *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932–33 (9th Cir. 2010) (recognizing, for purposes of § 706(1), that statute required Forest Service to prohibit use of motorized vehicles even though the statutory prohibition did not specifically refer to the Forest Service).

Defendants Vought and CFPB ultimately appear to concede that the statute requires the Director to do *something* to identify the CFPB's budgetary needs, as they acknowledge that "the Fed cannot transfer funds absent knowledge of the Acting Director's funding determination." Opp'n at 18–19. They nonetheless contend that § 5497(a)(1) does not require any affirmative communication from the Director to the Federal Reserve because, for example, the Federal

Page 26 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
         SUMMARY JUDGMENT

Reserve can simply issue a FOIA request to the CFPB. Opp'n at 19 (citing 5 U.S.C. § 552). This argument fails on multiple levels. As an initial matter, the notion that § 5497(a)(1) does not require the Director to "request" funds is at odds with Defendant Vought's own characterization of his statutory role. His November 20, 2025, letter to Congress states that "that there are no funds legally available for the Bureau to *request* from the Federal Reserve System under 12 U.S.C. § 5497." ECF No. 29-1 (Ex. 1) at 4 (emphasis added). And he repeats this refrain multiple times, noting that there are "no combined earnings from which the Bureau can legally *request* funds at this time" and that "the amount currently available for the Bureau to request under 12 U.S.C. § 5497 . . . is legally $0." *Id* (emphasis added). If it were really true that the statute imposes no duty to request funds from the Federal Reserve, it would be passing strange for Defendant Vought to repeatedly describe his statutory role in those terms.

Moreover, Defendants' theory that the Fed can obtain the Director's funding determination by issuing a FOIA request pursuant to 5 U.S.C § 552 is inconsistent with both that statute and the CFPB's funding statute. To begin, "FOIA is legislation directed at securing public access to information, not an Act intended to interdict the flow of information among Government agencies." *FBI v. Abramson*, 456 U.S. 615, 631 n.14 (1982). But beyond that, this argument, taken to its logical conclusion, would imply that the Director could simply create a record naming the CFPB's funding needs, lock it in a drawer, and leave it to the Federal Reserve to intuit that such a record existed and know to request it—the kind of "untenable distinctions and unreasonable results" that courts should avoid in statutory interpretation. *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982). Further, because FOIA does not "require[] an agency to actually create records," *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980), Defendants Vought and CFPB's theory implies that the Director can simply defund the agency by never documenting his determination of the agency's funding needs in the first place. At one point, Defendant Vought appears to embrace this implication, suggesting that Congress made a "conscious decision" to confer on the Director the "discretion to refuse to request funding." Opp'n

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

at 20. Setting aside that this assertion is at odds with Defendants Vought and CFPB's recognition that the Federal Reserve must have "knowledge of the Acting Director's funding determinations," *id.* at 19, it is impossible to square with the statutory scheme, which expressly requires that the CFPB, helmed by the Director, implement and enforce federal consumer protection law. 12 U.S.C. § 5511(a). CFPB cannot possibly fulfill that statutory mandate if its Director has the unchecked power to unilaterally defund the agency.

Finally, there is no basis in the record for concluding that Defendants Vought and CFPB have actually complied with their statutory duty to convey their funding needs to the Federal Reserve. They note that there is "no evidence . . . that [Defendant Vought] would not have provided the Fed with a copy of [the letters] upon request," Opp'n at 19, but Plaintiffs do not have the burden of proving a negative. The Court's review is limited to the parts of the administrative record that are before it. 5 U.S.C. § 706. And despite being in the position to know whether he in fact conveyed his determination to the Federal Reserve, Defendant Vought offers no evidence that he did.[9]

### D. Defendant Vought and CFPB's actions violate the separation of powers.

The Challenged Decisions also violate separation of powers. Defendants Vought and CFPB argue that separation-of-powers violations cannot be pursued whenever there are also statutory violations, based on an incorrect and sweeping reading of *Dalton v. Specter*, 511 U.S. 462 (1994). Opp'n at 26. But the Ninth Circuit has already rejected that argument and held that "*Dalton* does not hold that every action in excess of statutory authority is not a constitutional violation." *Sierra*

---

[9] Plaintiffs do not contest that success under the APA would obviate the availability of an *ultra vires* claim based on Defendant Vought's refusal to comply with his statutory duty to request funding. *See* Opp'n at 24-25. But if this Court finds that judicial review is unavailable under the APA, then Plaintiffs lack "a meaningful and adequate opportunity for judicial review" of the challenged action and can assert an *ultra vires* claim. *Nuclear Regul. Comm'n, v. Texas*, 605 U.S. 665, 681 (2025) (citation modified). As a case cited by Defendants Vought and CFPB acknowledges, "[i]f a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action." *Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996). And an *ultra vires* claim is meritorious here for the same reasons that Plaintiffs' § 706(1) claim is meritorious: Defendant Vought has refused to comply with his mandatory statutory duty to request funding for the CFPB for FY 2026.

Page 28 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
                SUMMARY JUDGMENT

*Club v. Trump*, 963 F.3d 874, 889 (9th Cir. 2020), *vacated and remanded sub nom.*, *Biden v. Sierra Club*, 142 S. Ct. 46 (2021). This is not a run-of-the mill statutory violation case. Rather, Defendant Vought's refusal to request sufficient funding for the CFPB, as part of his ongoing effort to shutter the agency, usurps Congress' constitutional powers, including its power of the purse under the Spending Clause and Appropriations Clause. That constitutional violation is separate and apart from Defendant Vought's statutory violations.

### E. Plaintiffs have not abandoned the Sixth Cause of Action.

Plaintiffs' Sixth Cause of Action requests a declaratory judgment, and Plaintiffs presented argument in support thereof in Part IV.C. of Plaintiffs' motion under the heading titled "Plaintiffs are entitled to a declaratory judgment[.]" Moreover, the allegations articulated in Plaintiffs' Sixth Cause of Action are thoroughly argued throughout Plaintiffs' motion. *See*, *e.g.,* ECF No. 68 ¶ 172 (alleging that the definition of "combined earnings" espoused by Defendants Vought and CFPB is "contrary to the meaning . . . in the Dodd-Frank Act"); Br. at 21–23 (corresponding argument); *see also* ECF No. 68 ¶ 175 (alleging that an actual and substantial controversy exists between Plaintiffs and Defendants); Br. at 30 (corresponding argument); *see also* ECF No. 168 ¶ 176 (alleging that Plaintiffs rely on the CFPB's operations); Br. at 15–19 (corresponding argument). In any event, Defendants Vought and CFPB rely on a case interpreting the Federal Rules of Appellate Procedure, which are not applicable here. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (citing Fed. R. App. P. 28(a)(6) (amended 2013), requiring an appellant to argue their contentions and the reasons for the contentions).

### IV. Plaintiffs Are Entitled to the Injunctive and Declaratory Relief They Seek

### A. Plaintiffs are entitled injunctive and declaratory relief, in addition to vacatur, on their claims challenging the Challenged Decisions.

"A federal court enjoys broad equitable powers," including "its choice of equitable remedies" such as injunctions. *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001). There is no rule against the Court issuing injunctive and declaratory relief in addition to vacatur, as Defendants Vought and CFPB seem to suggest. *See*

Page 29 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

Opp'n at 28–29. Indeed, courts routinely vacate a challenged agency action under the APA while also enjoining illegal conduct. *See, e.g.*, *New York v. Dep't of Energy*, No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *17 (D. Or. Nov. 10, 2025) (Kasubhai, J.) (ordering injunction in addition to vacatur to prevent defendants from "continu[ing] to implement" a vacated policy "without reference to" the policy itself); *New York v. Noem*, No. 25-cv-8106 (LAK), 2025 WL 2939119, at *11 (S.D.N.Y. Oct. 16, 2025) (granting summary judgment for plaintiff on § 706(2) claim and enjoining federal government to obligate a grant award unlawfully withheld); *California v. U.S. Dep't of Transp.*, No. 25-cv-208-JJM-PAS, 2025 WL 3072541, at *12 (D.R.I. Nov. 4, 2025) (vacating challenged immigration enforcement condition in grant award and enjoining future implementation of the condition). The various arguments Defendants Vought and CFPB put forth in their opposition reinforce their intransigence at following statutory duties and underscore the importance of the Court issuing the injunctive and declaratory relief Plaintiffs have requested.

### B. Plaintiffs are entitled to an order compelling Defendant Vought to request funding for the entirety of Fiscal Year 2026 under 5 U.S.C. § 706(1).

Defendants Vought and CFPB's arguments against an order compelling agency action pursuant to 5 U.S.C. § 706(1), Opp'n at 29–31, largely rehash their failed merits arguments on Plaintiffs' § 706(1) claim and should be rejected for the reasons set forth above. *See supra* Part III.C. In particular, Defendants Vought and CFPB argue incorrectly that such an order cannot be issued here because the agency action Plaintiffs seek is not "discrete." Opp'n at 29–30. To the contrary, the agency action Plaintiffs seek to compel—taking the actions required by 12 U.S.C. § 5497—could not be any more "discrete." Defendants Vought and CFPB have already determined the funding reasonably necessary to carry out the authorities of the CFPB, and Plaintiffs merely seek an injunction requiring those Defendants to request that funding from the Federal Reserve.

Additionally, Defendants Vought and CFPB's argument that Plaintiffs are not entitled to a § 706(1) order compelling agency action because they "have an adequate remedy in the form of an action for mandatory relief . . . against the Fed," Opp'n at 30, is unavailing because, as explained above, it both absolves Defendant Vought of his statutory duty to request funding and

Page 30 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
            SUMMARY JUDGMENT

improperly imputes a duty onto the Federal Reserve to meticulously track any potential statements Defendant Vought may make—or even read his mind—to discern what funding the CFPB will need to continue operations. *See supra* Part III.C. In other words, even if the Federal Reserve is "profitable" under the OLC definition, Defendant Vought implies that he could simply determine the dollar amount reasonably necessary for the CFPB to meet its statutory duties and never communicate that amount to anyone, unilaterally shutting down the CFPB. Such an implausible result is clearly at odds with the text and structure of the Dodd-Frank Act. Although Defendant Vought calculated the amount reasonably necessary to operate the CFPB for this fiscal year, he only did so in communications to the President and Congress, under a separate statutory section that does not require the Director to provide notice to the Federal Reserve. *See* 12 U.S.C. § 5497(e)(1). Nor did Defendant Vought provide notice to the Federal Reserve of what funding amount it needs to transfer to the CFPB or identify any other mechanism as to how the Federal Reserve should learn this information absent litigation. Injunctive and declaratory relief would close the door to such an absurd result and prevent further litigation on these points.

**C. Defendants Vought and CFPB's other arguments against injunctive relief lack merit.**

Defendants Vought and CFPB's assertion that Plaintiffs must provide evidence of significant financial expenses to secure a permanent injunction fails because that argument relies on cases in which plaintiffs alleged financial loss as the basis for their harm. *See Petroluem Expl. v. Pub. Serv. Comm'n of Ky.*, 304 U.S. 209, 218–20 (party seeking injunctive relief argued economic harm as its irreparable injury); *see also Nat'l Council of Agric. Emps. v. U.S. Dep't of Lab.*, No. 22-3569 (RC), 2023 WL 2043149, at *6–7 (D.D.C. Feb. 16, 2023) (ruling that courts may depart from the rule that "economic harm does not constitute irreparable injury" where the economic harm is unrecoverable and severe). By contrast, Plaintiffs have alleged their harm to be impairment of consumer protection activities and undermining Plaintiffs' abilities to enforce their laws. *See* Br. at 15–19, 31.

Defendants Vought and CFPB's remaining arguments—that no actual or imminent

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

controversy exists between the parties and that relief cannot be granted against "an official's thoughts"—are incorrect. Opp'n at 29, 32. Defendant Vought did not merely have "thoughts" about CFPB funding, but rather stated in letters to Congress and the President and in court filings that he will not request funding for the CFPB for the current fiscal year, based on a change in the agency's legal interpretation of a governing statute. *See supra* Part III.A. That is the kind of agency action that this court can vacate. *See Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F. 4th 846, 854 (5th Cir. 2022) (holding that advisory opinion was final agency action because "where agency action withdraws an entity's previously held discretion, that action alters the legal regime, binds the entity, and thus qualifies as final agency action."); *see also Nat'l Automatic Laundry & Cleaning Council,* 443 F.2d at 698. When Defendant Vought did request funding for the CFPB's continued operations, he only did so for one quarter of the fiscal year and admitted doing so only because of a court order. As the current quarter will end March 31, 2026, the controversy is actual and imminent, and as Defendant Vought will evidently only request funding from the Federal Reserve for the continued operation of the CFPB under court order, the injunctive and declaratory relief Plaintiffs seek are warranted.

## V.    The Court Should Not Stay Any Injunctive Relief.

Plaintiffs' request to compel Defendant Vought to request funding from the Federal Reserve for the continued operations of the CFPB is already narrowly tailored to the injuries Plaintiffs have alleged, which is the harm Plaintiffs will suffer should the CFPB cease operations. Similarly, any stay in relief is not warranted as Plaintiffs have demonstrated they will suffer irreparable harm should the CFPB cease operation. The CFPB is only funded through March 31, 2026, and a court order compelling Defendant Vought to seek funding is necessary to ensure the CFPB continues its operations beyond that date.

## <u>CONCLUSION</u>

For all of the reasons articulated above and in their opening memorandum of law, Plaintiffs respectfully request that the Court enter summary judgment for Plaintiffs on Counts One, Three,

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047

Four, Five, and Six of Plaintiffs' First Amended Complaint, ECF No. 68.

Dated: February 25, 2026

Respectfully submitted,

**LETITIA JAMES**
Attorney General of New York

By: _s/ Stephen Thompson_
Stephen C. Thompson
_Special Counsel_
Rabia Muqaddam
_Chief Counsel for Federal Initiatives_
Patrick Gibson
_Assistant Attorney General_
28 Liberty Street
New York, NY 10005
(212) 416-6183
stephen.thompson@ag.ny.gov

_Counsel for the State of New York_

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: _s/ Leanne Hartmann_
Leanne Hartmann #257503
Brian Simmonds Marshall #196129
Joseph Platt #T2511101, IL SBA #6317731
_Senior Assistant Attorneys General_
Derek Olson #225504
_Assistant Attorney General_
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Joseph.Platt@doj.oregon.gov
Derek.Olson@doj.oregon.gov

_Counsel for the State of Oregon_

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: _s/ Shankar Duraiswamy_
Shankar Duraiswamy
_Deputy Solicitor General_
Monica E. Finke
Amanda McElfresh
Jake Mazeitis
_Deputy Attorneys General_
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 376-3377
Shankar.Duraiswamy@njoag.gov

**PHILIP J. WEISER**
Attorney General of Colorado

By: _s/ David Moskowitz_
David Moskowitz
_Deputy Solicitor General_
Martha Upton Fulford
_Assistant Deputy Attorney General_
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Martha.Fulford@coag.gov

Page 33 - PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

*Counsel for Plaintiff State of New Jersey*

*Counsel for Plaintiff State of Colorado*


**ROB BONTA**
Attorney General of California

By: *s/ Asal Akhondzadeh*
Asal Akhondzadeh
*Deputy Attorney General*
Nicklas Akers
*Senior Assistant Attorney General*
Michele VanGelderen
*Supervising Deputy Attorney General*
300 S Spring St, Ste 1702
Los Angeles, CA 90013-1256
asal.akhondzadeh@doj.ca.gov

*Counsel for the State of California*


**KRISTIN K. MAYES**
Attorney General of Arizona

By: *s/ William Y. Durbin*
William Y. Durbin
*Senior Litigation Counsel*
Office of the Attorney General
2005 North Central Ave.
Phoenix, Arizona 85004
602-542-3333
William.Durbin@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*


**WILLIAM TONG**
Attorney General of Connecticut

By: *s/ Rebecca Borne*
Rebecca Borne
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5400
Rebecca.Borne@ct.gov


*Counsel for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: *s/ Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for Plaintiff State of Delaware*


Page 34 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
        SUMMARY JUDGMENT

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: *s/ Mitchell P. Reich*
MITCHELL P. REICH
Senior Counsel to the Attorney General
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
(202) 279-1261
mitchell.reich@dc.gov


*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: *s/ Kalikoʻonālani D. Fernandes*
David D. Day
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**KWAME RAOUL**
Attorney General of Illinois

By: *s/ Katharine Roller*
Katharine Roller
Complex Litigation Counsel
Sarah J. Gallo
Ethics Unit Supervisor, Special Litigation
Bureau
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603
(773) 519-1842
Katharine.roller@ilag.gov
Sarah.gallo@ilag.gov

*Counsel for Plaintiff State of Illinois*

**AARON M. FREY**
Maine Attorney General

By: *s/ Katherine W. Thompson*
Katherine W. Thompson
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov


*Counsel for Plaintiff State of Maine*

Page 35 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: *s/ Lauren Gorodetsky*
LAUREN GORODETSKY
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7057
lgorodetsky@oag.maryland.gov


*Counsel for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: *s/ Nita K. Klunder*
Katherine Dirks
*Chief State Trial Counsel*
Nita K. Klunder*
*Assistant Attorney General*
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2394
katherine.dirks@mass.gov
nita.klunder@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: *s/ Neil Giovanatti*
Neil Giovanatti
*Assistant Attorney General*
Michigan Department of Attorney General
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

By: *s/ Sarah Doktori*
Katherine Bies
Sarah Doktori
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
(651) 583-6694
sarah.doktori@ag.state.mn.us
katherine.bies@ag.state.mn.us

*Counsel for the State of Minnesota*

Page 36 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
           SUMMARY JUDGMENT

**AARON D. FORD**
Attorney General of Nevada

By: *s/ K. Brunetti Ireland*
K. Brunetti Ireland (Nevada Bar No. 15368)
Chief Deputy Attorney General, Special
Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov


*Counsel for the State of Nevada*

**RAÙL TORREZ**
New Mexico Attorney General

By: *s/ Anjana Samant*
Anjana Samant
Deputy Counsel for Impact Litigation
New Mexico Department of Justice
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
(505) 270-4332
ASamant@nmdoj.gov


*Counsel for the State of New Mexico*

**JEFF JACKSON**
Attorney General of North Carolina

**LAURA HOWARD**
Chief Deputy Attorney General

By: *s/ Daniel P. Mosteller*
Daniel P. Mosteller
*Associate Deputy Attorney General*
Daniel T. Wilkes
*Assistant Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for the State of North Carolina*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: *s/ Alex Carnevale*
Alex Carnevale
Special Assistant Attorney General
Office of the Attorney General – State of
Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

Page 37 -  PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL
          SUMMARY JUDGMENT

**CHARITY R. CLARK**
Attorney General of Vermont

By: *s/ Samuel B. Stratton*
Samuel B. Stratton
*Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 595-4085
sam.stratton@vermont.gov

*Counsel for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: *s/ Samuel T. Ward-Packard*
Samuel T. Ward-Packard
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8938
samuel.ward-packard@wisdoj.gov

*Counsel for Plaintiff State of Wisconsin*

**JAY JONES**
Attorney General of Virginia

By: *s/ Tillman J. Breckenridge*
Tillman J. Breckenridge
*Solicitor General*
Mikaela A. Phillips
*Assistant Solicitor General*
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
(804) 786-2071
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

Attorney General for the State of New York
28 Liberty St.
New York, NY 10005
(929) 638-0047